**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **INDERJIT KUNDRA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No.  04-840  (RMC)** |
| ) | |
| **SPENCER ABRAHAM,**[1] **Secretary,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

**MEMORANDUM OPINION**

When an excellent statistician relies on his supervisor's supposed knowledge of his career, but does not fully describe his credentials in his application package for promotion, can he complain of discrimination when the supervisor relies on the written word and selects another excellent, but junior, statistician for the job?  The answer to this question is no.  Inderjit Kundra, a statistician employed by the Department of Energy ("DOE"), contends that DOE discriminated against him  based on his gender, religion, ethnicity and age when it failed to promote him to Lead Mathematical Statistician.  While conceding that Mr. Kundra presents a prima facie case, DOE moves for summary judgment on the ground that it had legitimate reasons for promoting another employee instead of Mr. Kundra.  The other employee submitted a more detailed application which noted more extensive supervisory experience.  The Court finds that DOE has presented non-discriminatory legitimate reasons for its selection.  Although Mr. Kundra contends that the alleged

---

[1] Mr. Kundra originally brought this suit against Spencer Abraham, in his official capacity as Secretary of the Department of Energy.  Samuel W. Bodman, the current Secretary, is substituted for his predecessor, Mr. Abraham, pursuant to Fed. R. Civ. P. 25(d)(1).

reasons are a mere pretext, he does not present evidence sufficient to raise a genuine issue of material fact in this regard. Accordingly, DOE's motion for summary judgment will be granted.

## I. FACTUAL BACKGROUND

Mr. Kundra was employed as a Mathematical Statistician, GS-14, in the Statistical Methods Group ("SMG") of the Energy Information Administration, DOE, at the time he applied for the promotion at issue in this case. Pl.'s Statement of Genuine Issues ("Pl.'s Facts") at 2; Def.'s Statement of Undisputed Material Facts ("Def.'s Facts") ¶ 1. On January 12, 2000, Mr. Kundra applied for the position of Lead Mathematical Statistician ("Lead Statistician") in SMG. Def.'s Facts ¶ 3.

The vacancy announcement for the position of Lead Statistician described the qualifications as follows:

> (a) successful completion of a full 4-year course of study in an accredited college or university leading to a bachelor's or higher degree that included 24 semester hours of mathematics and statistics, of which at least 12 semester hours were in mathematics and 6 semester hours were in statistics or (b) a combination of education and experience - at least 24 semester hours of mathematics and statistics, of which at least 12 semester hours were in mathematics and 6 semester hours were in statistics, as shown in (a) above, plus appropriate experience or additional education.

Def.'s Facts ¶ 4. The announcement also described the specialized experience required for the position as one year of experience in or related to the work of the position to be filled, including evidence of statistical work. The announcement gave as examples of statistical work (a) sampling, (b) collecting and analyzing data, and (c) applying known statistical techniques to data such as measurement of central tendency, dispersion, skewness, sampling error, simple and multiple correlation, analysis of variance, and tests of significance. *Id*. ¶ 5. The experience required must

have been equivalent to at least the next lower grade level in Federal service.  *Id.*  In addition, the announcement included the following four ranking factors or "Knowledge, Skills, and Abilities" ("KSAs") required for the position:

> (1) ability to identify, assess and resolve complex quality assurance problems in survey and data collection programs and data analysis;
> (2) knowledge of survey methodologies including total survey design and cognitive interviewing procedures;
> (3) knowledge of the issues, objectives, and work processes involved in energy information survey, collection, and organization efforts; and
> (4) ability to plan and organize team projects and activities and motivate team members to accomplish their work.

*Id.* ¶ 6.

Mr. Kundra was one of the candidates ranked "best qualified" by DOE's personnel office and he was referred to the selecting official on a Certificate of Eligibles list.  *Id.* ¶ 7, 18.  The Director of SMG who initiated the posting of the position was Lynda Carlson, and the selecting official for the position was Nancy Kirkendall.  *Id.* ¶¶ 9; *see also* Pl.'s Facts at 2.  Ms. Kirkendall did not select Mr. Kundra for the Lead Statistician position; instead she chose Renee Miller.  Pl.'s Facts at 1-2.

Ms. Kirkendall and Ms. Miller are Caucasian women who were in their 50s at the time DOE appointed Ms. Miller to the position of Lead Statistician.  *Id.* at 2.  Ms. Miller was 52 at the time she was appointed.  Ms. Miller is Jewish, and Ms. Kirkendall is Protestant.  *Id.* at 1-2.  Mr. Kundra is a male, Hindu, Asian/Indian.  *Id.* at 1.  At the time he was not selected for the promotion to Lead Mathematical Statistician, he was 65 years old.  *Id.*  He filed this suit claiming that DOE discriminated against him due to his gender, religion, and ethnicity in violation of Title VII of the

Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and due to his age, in violation of the Age

Discrimination Employment Act ("ADEA"), 29 U.S.C. § 633a.[2]

## II.  STANDARD OF REVIEW

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be

granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together

with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 247 (1986); *see also Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir.

1995).  Moreover, summary judgment is properly granted against a party who "after adequate time

for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of

an element essential to that party's case, and on which that party will bear the burden of proof at

trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In ruling on a motion for summary judgment, the court must draw all justifiable

inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true.

*Anderson*, 477 U.S. at 255.  A nonmoving party, however, must establish more than "the mere

existence of a scintilla of evidence" in support of its position.  *Id.* at 252.  In addition, the nonmoving

party may not rely solely on allegations or conclusory statements.  *Greene v. Dalton*, 164 F.3d 671,

675 (D.C. Cir. 1999).  Rather, the nonmoving party must present specific facts that would enable a

reasonable jury to find in its favor.  *Id.* at 675.  If the evidence "is merely colorable, or is not

---

[2] Mr. Kundra makes much of the fact that Ms. Carlson is a white Jewish woman who was in her 50s at the relevant time.  Although Ms. Carlson wrote the initial vacancy announcement, she left the agency before Ms. Kirkendall selected Ms. Miller for the Lead Statistician position.

significantly probative, summary judgment may be granted."  *Anderson*, 477 U.S. at 249-50 (citations omitted).

### III.  ANALYSIS

Title VII prohibits an employer from discriminating on the basis of race, color, religion, sex, or national origin in hiring decisions, in compensation, terms, and conditions of employment, and in classifying employees in a way that would adversely affect their status as employees.  42 U.S.C. § 2000e-16.  To establish a prima facie case of discrimination, a plaintiff must show (1) that he is a member of a protected class; (2) that he suffered an adverse personnel action; (3) under circumstances giving rise to an inference of discrimination.  *Brown v. Brody*, 199 F.3d 446, 452 (D.C. Cir. 1999) (applies to Title VII claim); *see also Barnette v. Chertoff*, 453 F.3d 513, 515 (D.C. Cir. 2006) (applies to ADEA claim); *see Stella v. Mineta*, 284 F.3d 135, 144-46 (D.C. Cir. 2002) (under the ADEA, a plaintiff must show that there is some causal connection between the adverse action and the plaintiff's age).

Here, Mr. Kundra claims that he is a member of a protected class – an older Hindu male of Indian/Asian origin.  Further, he asserts that he applied for, and was qualified for, a promotion to the position of Lead Statistician, and that DOE did not promote him but instead placed a younger white Jewish woman in the position.  DOE concedes that Mr. Kundra has presented a prima facie case.  Def.'s Mem. at 9.  However, DOE argues that it had legitimate nondiscriminatory reasons for its promotion decision.

Once a plaintiff establishes a prima facie case, then the burden of production shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for its action.  *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981); *McDonnell Douglas Corp. v. Green*, 411

U.S. 792, 802 (1973); *see also Barnette*, 453 F.3d at 515 (shifting burden applies to ADEA claim). If the defendant meets this burden, then the plaintiff must have the opportunity to prove, by a preponderance of the evidence, that the legitimate reasons offered by the employer were not its true reasons, but were a "pretext" for discrimination. *Burdine*, 450 U.S. at 253; *McDonnell Douglas*, 411 U.S. at 804. Although the intermediate evidentiary burden shifts back and forth under the *McDonnell Douglas* framework, the ultimate burden of persuasion rests at all times on the plaintiff. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000).

Under this framework, a plaintiff's unsubstantiated denials of the employer's articulated legitimate reason for its employment decision are insufficient to withstand a motion for summary judgment. *Phillips v. Holladay Property Servs., Inc.*, 937 F. Supp. 32, 35 n.2 (D.D. C. 1996); *see also Batson v. Powell*, 912 F. Supp. 565, 578 (D.D.C. 1996) (plaintiff must produce some objective evidence showing pretext in order to avoid summary judgment). A court may not "second-guess an employer's personnel decision absent [a] demonstrably discriminatory motive." *Fischbach v. D.C. Dep't of Corrections*, 86 F.3d 1180, 1183 (D.C. Cir. 1996) (quoting *Milton v. Weinberger*, 696 F.3d 94, 100 (D.C. Cir. 1982)). Title VII does not permit a court to act as a "super-personnel department that reexamines an entity's business decisions." *Barbour v. Browner*, 181 F.3d 1342, 1346 (D.C. Cir. 1999).

DOE contends that it selected Ms. Miller instead of Mr. Kundra for the promotion to Lead Statistician because Ms. Kirkendall evaluated their qualifications and found Ms. Miller to be the superior candidate. Mr. Kundra contends that this is mere pretext for discrimination because he alleges that he was the superior candidate.

In some circumstances, qualifications evidence may show pretext. *Ash v. Tyson Foods, Inc.*, 546 U.S. 454 (2006). A factfinder may infer pretext if a reasonable employer would have found the plaintiff to be "significantly" better qualified for the job. *Aka v. Washington Hosp. Ctr.*, 156 F.3d 1284, 1294 (D.C. Cir. 1998).[3] Thus, "slight questions of comparative qualifications do not warrant a jury trial." *Hammond v. Chao*, 383 F. Supp. 2d 47, 57 (D.D.C. 2005) (quoting *Walker v. Dalton*, 94 F. Supp. 2d 8, 16 (D.D.C. 2000)) (internal quotation marks omitted). A court "will not reexamine governmental promotion decisions where it appears the Government was faced with a difficult decision between two qualified candidates, particularly when there is no other evidence" of discrimination. *Barnette*, 453 F.3d at 519. Further, a plaintiff cannot demonstrate pretext merely based on his subjective assessment of his own performance. *Hammond*, 383 F. Supp. 2d at 57.

*Stewart v. Ashcroft*, 352 F.3d 422 (D.C. Cir. 2003), provides a good example of these concepts. In *Stewart*, an African-American attorney brought a race discrimination claim against the Department of Justice ("DOJ") claiming that he was discriminated against when he applied for a promotion to a position as Chief of the Environmental Crimes Section and DOJ selected a white man. The plaintiff alleged that trial experience was the most important qualification for the Chief to have. To the contrary, the Department asserted that management experience was most critical. The court deferred to the government's determination regarding the nondiscriminatory qualities it

---

[3] Some courts have stated that pretext can be established by comparing qualifications evidence only when the disparity in qualifications is "so apparent as virtually to jump off the page and slap [the court] in the face." *See e.g.*, *Cooper v. Southern Co.*, 390 F.3d 695, 732 (11th Cir. 2004); *Choates v. Powell*, 265 F. Supp. 2d 81, 95 (D.D.C. 2003). The Supreme Court recently rejected this formulation as "unhelpful and imprecise." *Ash*, 546 U.S. 454. While refusing to define the appropriate standard, the Supreme Court cited the *Aka* standard with approval. *Id.*

sought for the position, and found that the selectee had more management experience than the plaintiff. *Id*. at 429. In addition, the court compared the written applications of the candidates and found that much less effort and thought went into plaintiff's application than the selectee's application and that the plaintiff's qualifications for the position were not discernibly better than the selectee's. *Id*.; *see also Oliver-Simon v. Nicholson*, 384 F. Supp. 2d 298, 309 (D.D.C. 2005) (the employer stated a legitimate non-discriminatory reason for not selecting the plaintiff where the plaintiff's application fell short of the other applicants with regard to the level of detail and completeness). At most, any differences in the candidates' qualifications merely indicated a "close call" that did not overcome the government's motion for summary judgment. *Id*. at 430.

In contrast, in *Aka*, 156 F.3d 1284, the plaintiff presented an issue of fact regarding whether the defendant hospital's reasons for not placing him as a pharmacy technician were discriminatory. The plaintiff "was a 19-year employee with a good record who had earned two degrees while on the job — yet after his bypass surgery he lost out to an applicant who had worked at the hospital for less than a year as a laundry-folder." *Id*. at 1299. There was sufficient evidence in the record to show that the plaintiff was "markedly" more qualified than the selectee. *Id*.

For the job at issue in this case, the candidates for promotion were required to present their credentials for four ranking factors, the KSAs, on the job application. While Mr. Kundra was qualified for the job as Lead Statistician, Ms. Kirkendall selected Ms. Miller because Ms. Miller's application was superior to that of Mr. Kundra. Kirkendall Dep. at 70-73 (Miller's application was "convincing"); *id*. at 77 (it had more "substance and depth."). With regard to the first ranking factor regarding the ability to assess and resolve quality assurance problems, Ms. Miller described in detail the types of quality assurance problems she had come across, the steps she took to investigate them,

and the results she achieved.   Def.'s Mem., Report of Investigation Ex. 5 Kirkendall Aff. ("Kirkendall Aff.") at 2.   Mr. Kundra simply stated without details that he was a member of the Nonresponse Quality Review Board for the Census 2000, that he interfaced with contractors and suggested improvements, and that he consulted inside and outside the agency regarding data collection and evaluation.   *Id*. at 2-3.

With regard to the second factor regarding knowledge of survey methodologies, Ms. Miller detailed what she had learned through experience and training, citing the papers she had presented on this topic in 1990, 1996, and 1998 and providing dates and context for all she described.  Mr. Kundra also indicated that he had extensive knowledge based on his education and experience; however, the details were minimal.  *Id*. at 3.  Further, Mr. Kundra's application indicated that the last paper he gave was in 1986 and the last training he listed was in 1975.  *Id*.  Similarly, as to the third ranking factor, regarding the applicant's knowledge of the issues, objectives, and work processes involved in energy information survey, collection, and organization, Ms. Miller carefully documented her knowledge and experience.  *Id*. at 4.  Mr. Kundra stated without elaboration that he had conducted sampling feasibility studies and that he had designed sample surveys.  *Id*.  He also indicated that he directs the review of certain publications and data reports.  *Id*.

Finally, ranking factor four required the applicants to indicate their ability to plan, organize, and motivate team activities.  Ms. Miller described in detail what she had done as acting Director of Statistics and Methods Group, as a team leader in SMG, as a member of the Quality Council, as a team leader of the Common Data Definitions Team, and during her tenure in the Quality Assurance Division.  *Id*. at 4.  With little detail, Mr. Kundra set forth his work on the Category 1 Review Team, as a Supervisory Mathematical Statistician, as a team leader of the Frames

and Statistical Methods Team, and as Chief of the Statistical Design and Evaluation Branch.  *Id*. at 5.

Mr. Kundra admits that Ms. Miller's KSAs were longer and more detailed.  Pl.'s Mem. at 14.  Nevertheless, he contends that his qualifications were superior.  He points to the fact that he has a "Ph.D. (all but dissertation)"[4] in Mathematics and Statistics and the highest degree that Ms. Miller holds is a Master's Degree in Economic and Social Statistics.[5]  Pl.'s Mem. at 3-4.  He also claims that his technical expertise outweighed that of Ms. Miller, based on his contention that he is considered the expert on sampling in SMG, and that he is the only one in SMG who did model quality documentation.  Pl.'s Facts at 3.

First, it must be emphasized that this Court is not authorized to act as a "super personnel department" and it may not second-guess DOE's selection of Ms. Miller over Mr. Kundra, absent evidence of discrimination.  *See Fischbach*, 86 F.3d at 1183.  Second, a difference in qualifications constitutes evidence of pretext only where the plaintiff's qualifications are "significantly" superior to those of the selectee.  *Aka*, 156 F.3d at 1294.  Here, Mr. Kundra has not pointed to evidence showing that his qualifications were "significantly" better than Ms. Miller's. The requirements for the Lead Statistician position do not mandate a Ph.D or technical expertise in sampling.  Like the plaintiff in *Stewart*, 352 F.3d at 429, Mr. Kundra put much less effort and thought into his application than did the selectee, and thus DOE selected the candidate who presented the more thoughtful and detailed application.

---

[4] While Mr. Kundra completed the coursework for a Ph.D., he does not actually hold a Ph.D. because he did not complete a dissertation.

[5] Ms. Miller's Master's Degree was an applied statistics degree.  Miller Dep. at 25-26.

Also, DOE selected Ms. Miller based on her superior qualifications and experience as a supervisor — the fourth KSA — because the Lead Statistician position was a supervisory position.  Ms. Kirkendall indicated at her deposition that the job was "primarily supervisory." Kirkendall Dep. at 41-42.[6]  "Courts defer to the employer's decision as to which qualities required by the job (substantive versus managerial) it weighs more heavily." *Barnette v. Chertoff*, 453 F.3d 513, 517 (D.C. Cir. 2006).  Thus, the Court must defer to the DOE's determination that supervisory skills and experience weighed heavily in its selection of a Lead Statistician.  As described above, Ms. Miller's application presented a more thorough and detailed explanation of her qualifications as a supervisor.  Further, she already held a team leader position from February 1997 to November 2000 when she was appointed as Lead Statistician.  Pl.'s Ex. 9, Miller's Application, resume at 1.  Mr. Kundra's application shows that he acted as a supervisor only from April 17, 1994 to August 15, 1994.  Pl.'s Ex. 8, Kundra's Application, Form 171 at 3.

Mr. Kundra also argues that Ms. Kirkendall should have relied on her memory of his work experience over the prior twenty years based on her personal knowledge of Mr. Kundra. Kundra Dep. at 153.  Ms. Kirkendall indicated that in fact she did take into account her personal knowledge of the applicants, but that she concentrated on the KSAs in making her decision. Specifically, at her deposition she testified as follows:

> Q.  Do you know whether, as a selecting official, it would be appropriate or not to consider personal knowledge versus just what came in on the package?

---

[6] "[T]he lead mathematical statistician supervises.  Well, they are the team leader over a team responsible for doing all of these under (sic) duties and responsibilities, so they have to be able to initiate jobs plans, design, and conduct the quality assurance projects for the group.  And then they have to work with the team members to make sure that they understand it, that the work is going on well."  Kirkendall Dep. at 92.

11

> A.  It's difficult not to consider it, but they advise you to pay special attention to what's in the written package, to avoid the appearance of bias that might result form having knowledge of these people.  After all, you are also supposed to be able to consider people that you might not know.  And so if it's going to be fair, you're supposed to concentrate on the written package.

Kirkendall Dep. at 74-75.  In determining whether proffered reasons are pretext, courts do not examine whether the reasons were correct but instead focus on whether the employer honestly believed the reasons it offers.  *Fischbach*, 86 F.3d at 1183.  Thus, where a selecting official makes a decision based on the application and his personal knowledge of the candidates, even if the selecting official's personal knowledge was incorrect, the court will defer to the employer's decision so long as there is no evidence of bad faith.  *Hammond*, 383 F. Supp. 2d at 58.  Here, there is evidence that Ms. Kirkendall, the selecting official, selected Ms. Miller based primarily on a comparison of the written applications, and secondarily based on her personal knowledge of the candidates.  There is no evidence of bad faith, and thus the Court must defer to DOE's selection of Ms. Miller.

Mr. Kundra also argues that Ms. Miller was preselected, alleging that Ms. Kirkendall told him that the position was "wired."  Compl. ¶ 39.[7]  Ms. Kirkendall denies making such a comment.  Def.'s Mem., Report of Investigation Ex. 5 at 5.  Mr. Kundra has presented no corroboration of the statement.  Even if he had, it must be noted that preselection itself does not violate the law so long as it is based on the qualifications of the party and not on a basis prohibited by Title VII or the ADEA.  *Oliver-Simon*, 384 F. Supp. 2d at 310 (citing *Goostree v. Tennessee*, 796

---

[7] The Complaint also alleges that Ms. Miller was given special training and that he was not. Compl. ¶¶ 27 & 42.  However, Mr. Kundra admitted at his deposition that he was not denied any training that he requested.  Kundra Dep. at 80.  Ms. Miller requested the training.  Miller Dep. at 98-99.

F.2d 854, 861 (6th Cir. 1986)).  "[A] plaintiff's pre-selection claim does not advance [his] case for

pretext unless [he] produces some evidence that discrimination played a role . . . ."  *Oliver-Simon*,

384 F. Supp. 2d at 310.  Mr. Kundra has not produced evidence of discrimination.

## IV. CONCLUSION

For the foregoing reasons, DOE's motion for summary judgment [Dkt. # 23 ] will be

granted and this case will be dismissed.  A memorializing order accompanies this Memorandum

Opinion.


Date:  June 25, 2007                              _____/s/_____
                                                  ROSEMARY M. COLLYER
                                                  United States District Judge